Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAMON HILL; | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| PAE INCORPORATED, CHARLES D. PEIFFER, MARSHALL A. HEINBERG, PAUL T. BADER, JOHN P. HENDRICKSON, MARY M. JACKSON, LOUIS SAMSON, and DELARA ZARRABI, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Ramon Hill ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against PAE Incorporated ("PAE" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Amentum Government Services Holdings LLC ("Parent") through merger vehicle Pinnacle Virginia Merger Sub Inc. ("Merger Sub" and collectively with Parent,

"Amentum") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 26, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Amentum will acquire all the outstanding shares of PAE common stock for $10.05 per share in cash. As a result, PAE will become an indirect wholly-owned subsidiary of Amentum.

3.      Thereafter, on December 6, 2021, PAE filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Preliminary Proxy Statement reveals that no committee of disinterested Board members was created to run the sales process.

5.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on December 6, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation

of the Exchange Act.   As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for PAE, provided by PAE management to the Board and the Board's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley") and Raymond James & Associates, Inc.  ("Raymond James") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Morgan Stanley and Raymond James, if any, and provide to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a PAE stockholder.

9.      Defendant PAE provides operational solutions and outsourced services for the United States government, other allied governments, international organizations, and companies. PAE is incorporated under the laws of Delaware and has its principal place of business at 7799 Leesburg Pike, Suite 300 North, Falls Church, Virginia 22043.  Shares of PAE common stock are traded on the Nasdaq Stock Exchange under the symbol "PAE".

10.     Defendant Charles D. Peiffer ("Peiffer") has been a director of the Company at all relevant times. In addition, Peiffer serves as the Company's Interim President, Chief Executive Officer ("CEO"), Executive Vice President, and Chief Financial Officer.

11.     Defendant Marshall A. Heinberg ("Heinberg") has been a director of the Company at all relevant times. In addition, Heinberg serves as the Company's Chairman of the Board of Directors.

12.     Defendant Paul T. Bader ("Bader") has been a director of the Company at all relevant times.

13. Defendant John P. Hendrickson ("Hendrickson") has been a director of the Company at all relevant times.

14. Defendant Mary M. Jackson ("Jackson") has been a director of the Company at all relevant times.

15. Defendant Louis Samson ("Samson") has been a director of the Company at all relevant times.

16. Defendant Delara Zarrabi ("Zarrabi") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 10 - 16 are collectively referred to as the "Individual Defendants."

18. Non-Party Amentum is a premier global technical and engineering services partner supporting critical programs of national significance across defense, security, intelligence, energy, and environment. Amentum is a Delaware limited liability company headquartered in Germantown, Maryland.

19. Non-Party Merger Sub is a wholly owned subsidiary of Amentum created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.     PAE provides operational solutions and outsourced services for the United States government, other allied governments, international organizations, and companies. The Company operates through two segments, Global Mission Services and National Security Solutions. The Global Mission Services segment engages in logistics and stability operations, including lifecycle logistics operations, humanitarian, and stability operations; infrastructure management, such as mission operations support, space development and operations, and test and training ranges; and force readiness comprising the maintenance and repair of military and civilian vehicle fleets and aircraft. The National Security Solutions segment offers counter-threat solutions, such as training support and counter-terrorism solutions; information optimization services, including business process outsourcing services to government agencies, such as citizenship processing and litigation services, and systems support; and intelligence solutions comprising intelligence analysis, mission support, program management, engineering, and training solutions. PAE was founded in 1955 and is headquartered in Falls Church, Virginia.

24.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the August 5, 2021 press release announcing its 2021 Q2 financial results, the Company highlighted revenue of $747.2 million, operating income of $30.8 million, net income of $14.4 million, with an adjusted EBITDA of $53.3 million (margin of 7.1% of revenue).

25.     Speaking on the positive results, CEO Defendant Peiffer said, "'We delivered strong adjusted EBITDA and margins with solid revenue performance in the quarter. We started

to see a pickup in contract awards activity, which provides the foundation for revenue growth heading into the second half of the year.'"

26.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by PAE.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused PAE to enter into the Proposed Transaction without providing requisite information to PAE stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Notably, the Preliminary Proxy Statement fails to provide adequate information as to why the Board did not create a committee of independent and disinterested directors to run the sales process.

30.     Moreover, the Preliminary Proxy Statement fails to disclose adequate reasoning as to why the engagement of multiple financial advisors was necessary, especially considering that Morgan Stanley and Raymond James will each receive $14.2 million and $1 million in consideration, respectively, in exchange for their services relating to the Proposed Transaction.

31.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Amentum, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions

contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33.     On October 25, 2021, PAE issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **FALLS CHURCH, Va., October 25, 2021**—PAE Incorporated (NASDAQ: PAE, PAEWW) ("PAE" or "the Company"), a leading, highly diversified, global company that provides a broad range of operational solutions and outsourced services to meet critical and enduring needs of the U.S. government, other allied governments, international organizations and companies, today announced that it has entered into a definitive agreement to be acquired by an affiliate of Amentum Government Services Holdings LLC ("Amentum") in an all-cash transaction valued at approximately $1.9 billion, including the assumption of debt and certain fees.
>
> Amentum is a premier global technical and engineering services partner supporting critical programs of national significance across defense, security, intelligence, energy, and environment.
>
> Under the terms of the merger agreement, PAE shareholders will be entitled to receive $10.05 per share in cash upon the consummation of the transaction, which is subject to shareholder approval and other customary closing conditions, including regulatory approvals. The purchase price represents an approximately 70% premium over PAE's closing price on October 22, 2021, the last trading day prior to the announcement of the transaction. The exercise price of PAE's outstanding warrants will be adjusted pursuant to PAE's warrant agreement unless the warrants are called for redemption pursuant to such warrant agreement.
>
> "By achieving an approximately 70% premium over PAE's closing price on October 22, 2021, PAE's Board believes this transaction will deliver significant value for PAE's shareholders. This is a historic milestone in PAE's legacy of service to the U.S. Government spanning over 66 years," said Marshall Heinberg, Chairman of the Board of Directors. "I want to commend Interim President and CEO Charlie Peiffer and the rest of the PAE management team for their outstanding work in getting the transaction to this point given many competing demands," Heinberg said.
>
> "I believe joining the capabilities and resources of PAE and Amentum will benefit the customers and employees of both companies. This transaction creates new

opportunities for the technology innovation our customers need to drive their critical missions," said PAE Interim CEO and President Charlie Peiffer. "Aided by an attractive demand environment and PAE's diversification across its customer base, contract portfolio and geographic reach, combining with Amentum is expected to provide our customers a wide array of capabilities and services via a broad range of contracting vehicles. Furthermore, this transaction should provide strong growth opportunities in terms of career development for our employees."

"Having a similar mission-oriented culture and creating new opportunities for our employees while maximizing shareholder value were of significant importance in the selection criteria for partnership in PAE's next chapter," said Peiffer. "We believe that joining with Amentum will enable PAE's talented workforce to deliver even more innovative solutions to our customers."

PAE's Board of Directors has unanimously recommended that its stockholders approve and adopt the merger agreement with Amentum. However, during a "go-shop" period effective through November 29, 2021, PAE may actively solicit alternative acquisition proposals from third parties in accordance with the terms of the merger agreement. The merger agreement includes a "break fee" in the event PAE terminates the merger agreement, and this "break fee" will be discounted in the event of a termination during the "go-shop" period. PAE does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required. Following the expiry of the "go-shop" period and the filing of the definitive proxy statement with the U.S. Securities and Exchange Commission ("SEC") and subsequent mailing to stockholders, a special meeting of PAE's stockholders will be held as soon as practicable to approve and adopt the merger agreement. The transaction is not subject to any financing conditions. Upon completion of the acquisition, which is expected to occur by the end of the first quarter 2022, PAE will become wholly owned by an affiliate of Amentum.

An affiliate of Platinum Equity, PE Shay Holdings, LLC, which owns approximately 22.5% of PAE's outstanding shares, has entered into an agreement with the Company to vote its shares in accordance with the recommendation of PAE's Board with respect to the proposed transaction.

PAE will file a current report on Form 8-K with the SEC containing a summary of terms and conditions of the proposed transaction.

### *Potential Conflicts of Interest*

34.     The breakdown of the benefits of the deal indicate that PAE insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured

unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of PAE.

35.     Notably, Company insiders, currently own large, illiquid portions of Company stock, company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, the Preliminary Proxy Statement fails to provide information regarding the beneficial ownership of Company stock by Company insiders and fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts.

36.     In addition, Company insiders, currently own company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares Underlying PAE RSU Awards | Number of Shares Underlying PAE PSU Awards at Target | Number of Shares Underlying PAE PSU Awards at Maximum Performance[1] | Value of Shares Underlying PAE RSU Awards and PAE PSU Awards at Target[1] | Value of Shares Underlying PAE RSU Awards and PAE PSU Awards at Maximum Performance[1] |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| Charles D. Peiffer, Interim Chief Executive Officer and Chief Financial Officer | 128,684 | 114,688 | 216,319 | $2,445,888.60 | $3,467,280.15 |
| Paul W. Cobb, Jr., General Counsel | 94,729 | 83,142 | 157,335 | $1,787,603.55 | $2,533,243.20 |
| Patricia M.C. Munchel, Chief Human Resources Officer | 76,899 | 66,709 | 126,199 | $1,443,260.40 | $2,041,134.90 |
| Rene Moline, President, NSS | 71,267 | 58,212 | 110,304 | $1,301,263.95 | $1,824,788.55 |
| Mark Monroe, Controller | 17,323 | 29,599 | 54,380 | $ 471,566.10 | $ 720,615.15 |
| Clinton Bickett, Interim President, GMS | 15,942 | 27,238 | 50,042 | $ 433,959.00 | $ 663,139.20 |
| **Non-Employee Directors** | | | | | |
| Paul T. Bader | 14,302 | — | — | $ 143,735.10 | — |
| Marshall A. Heinberg | 17,162 | — | — | $ 172,478.10 | — |
| John P. Hendrickson | 14,302 | — | — | $ 143,735.10 | — |
| Mary M. Jackson | 13,110 | — | — | $ 131,755.50 | — |

37.     In addition, certain employment agreements with certain PAE executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or

officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Tax Reimbursement ($)[4] | Total ($) |
|---|---|---|---|---|---|
| **Named Executive Officers** | | | | | |
| Charles D. Peiffer, Interim Chief Executive Officer and Chief Financial Officer | $3,887,993.50 | $3,467,280.15 | $320,503.56 | $ 215,556.98 | $7,891,334.19 |
| Paul W. Cobb, Jr., General Counsel | $1,748,062.66 | $2,533,243.20 | $169,308.12 | $ 110,349.15 | $4,560,963.13 |
| Patricia M.C. Munchel, Chief Human Resources Officer | $1,420,246.85 | $2,041,134.90 | $101,043.60 | $ 50,982.63 | $3,613,407.98 |
| Rene Moline, President, NSS | $1,198,701.29 | $1,824,788.55 | $156,528.42 | $ 105,043.13 | $3,285,061.39 |

38.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39.     Thus, while the Proposed Transaction is not in the best interests of PAE, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

40.     On December 6, 2021, the PAE Board caused to be filed with the SEC the materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*
*to the Proposed Transaction*

41.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

   a.  Adequate reasoning as to why it was necessary to engage multiple financial advisors;

   b.  Whether the confidentiality agreements entered into by the Company with Amentum differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

   c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Amentum, would fall away; and

   d.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning PAE's Financial Projections*

42.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for PAE provided by PAE management to the Board, Morgan Stanley, and

Raymond James, and relied upon by Morgan Stanley and Raymond James in their analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

43.     Notably, the Preliminary Proxy Statement reveals that as part of its analyses, Morgan Stanley reviewed, "certain financial projections with respect to the Company that were (i) prepared by management (the "Company financial projections")."

44.     Additionally, the Preliminary Proxy Statement reveals that as part of its analyses, Raymond James reviewed, "certain information related to the historical condition and prospects of the Company, as made available to Raymond James by or on behalf of the Company, including, but not limited to, the management projections."

45.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that PAE management provided to the Board, Morgan Stanley, and Raymond James. Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46.     With regard to the *Management Case 1*, *Management Case 2*, and *Street Case* Projections, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

> a.  EBITDA, including all underlying necessary metrics, adjustments, and assumptions utilized, and including the specific definition of EBITDA utilized;
>
> b.  UFCF, including all underlying necessary metrics, adjustments, and assumptions, used and including the specific definition of UFCF utilized.

47.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Morgan Stanley's or Raymond James' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

50.     In the Preliminary Proxy Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.     With respect to the *Trading Multiples Analysis*, the Preliminary Proxy Statement fails to disclose:

> a.  The specific inputs and assumptions used to determine the utilized selected multiple reference range for Run-Rate 2021E EBITDA of 8.0x – 10.0x; and
>
> b.  The specific inputs and assumptions used to determine the utilized selected multiple reference range for 2022E EBITDA of 7.5x – 9.5x.

52.     With respect to the *Discounted Equity Value Analysis*, the Preliminary Proxy Statement fails to disclose:

a. The specific inputs and assumptions used to determine the utilized next twelve months ("NTM") AV/EBITDA ratio range of 8.0x to 10.0x as applied to the Company's 2024 Adjusted EBITDA;

b. The specific inputs and assumptions used to determine the utilized discount rate of 10.6%,

c. The specific inputs and assumptions used to determine the Company's cost of equity of 10.6%;

d. The specific market risk premium utilized;

e. The risk-free rate utilized; and

f. The beta for the underlying stock utilized.

53. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

a. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of (1.0%) to 1.0%;

b. The terminal values for the Company calculated;

c. The specific inputs and assumptions used to determine the utilized discount rate range of 7.2% to 8.3%;

d. PAE's weighted average cost of capital; and

e. The specific adjustments made to the strike price of outstanding Company warrants in accordance with the warrant agreement.

54. With respect to the *Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

a. The specific date on which each Precedent Transaction was announced;

b. The specific date on which each Precedent Transaction Closed; and

c. The aggregate value of each Precedent Transaction.

55. With respect to the *Equity Research Analysts' Price Targets* Analysis, the Preliminary Proxy Statement fails to disclose:

    a.   The specific price targets analyzed;

    b.   The identity of the analysts and/or firms who created each analyzed price targets; and

    c.   The specific inputs and assumptions used to determine the utilized discount rate of 10.6%.

56.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of Morgan Stanley's fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public PAE stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Raymond James*

58.     In the Preliminary Proxy Statement, Raymond James describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

59.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The specific inputs and assumptions used to determine the utilized multiple range of 9.0x to 11.0x as applied to the Company's 2025 EBITDA;

    b.   The terminal values for the Company calculated;

    c.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.0% to 10.0%;

    d.   The Company's weighted average after-tax cost of debt and equity capital associated with executing the Company's business plan; and

    e.   The utilized estimate of the Company's and its peers' weighted average cost of capital.

60.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

61.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of Raymond James' fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public PAE stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

62.    Plaintiff repeats all previous allegations as if set forth in full herein.

63.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

64.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

65.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

66.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

67.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

68.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

69.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

72.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

73.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of PAE's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.  As a

result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

74.     The Individual Defendants acted as controlling persons of PAE within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause PAE to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled PAE and all of its employees.  As alleged above, PAE is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 13, 2021                    **BRODSKY & SMITH**

                                    By: _____
                                    Evan J. Smith
                                    240 Mineola Boulevard
                                    Mineola, NY  11501
                                    Phone:  (516) 741-4977
                                    Facsimile (561) 741-0626

                                    *Counsel for Plaintiff*